**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| QED, LLC, and Ronald J. Friedman, solely in his capacity as Chapter 11 Trustee of Debtor Level Solar, Inc., | Civil Action No. 20-cv-2767 |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| FABER DAEUFER & ITRATO, P.C., KENNETH ITRATO and DAVID NICOLAISEN, | Plaintiffs Demand A Jury Trial |
| Defendants. | |

Plaintiff QED, LLC, by its attorneys, Wollmuth Maher & Deutsch LLP, and Plaintiff,

Ronald J. Friedman, solely in his capacity as Chapter 11 Trustee of the debtor, Level Solar, Inc.,

by the Trustee's counsel, Silverman Acampora LLP, allege upon knowledge as to themselves

and their own acts and upon information and belief as to the acts of others as follows:

<u>Summary of Allegations</u>

1.      This is an action for conspiracy to defraud and breach of fiduciary duty on the

part of the Defendants, a law firm, Faber Daeufer & Itrato, P.C. (the "Faber Firm") and its

principal, Kenneth Itrato, and former counsel, David Nicolaisen.

2.      In a clear conflict of interest, Defendants, while simultaneously representing both

Level Solar Inc. ("Level Solar" or the "Company") and its former director and officer, Richard

Keiser, in the drafting, negotiation and execution of documentation for investments in the

Company by Plaintiff, QED LLC ("QED") from September 2014 forward, conspired with Keiser

in secretly altering a pre-existing investors' rights agreement to frustrate QED's and the

Company's ability to remove Keiser as a director even "for cause."[1]  Defendants implemented

Keiser's self-interested change to entrench himself, coached him on how to hide the change from

QED and its counsel, and breached their duty of candor and loyalty to their own client, the

Company, by withholding notice of Keiser's change from Level Solar's other director.

3.     Defendants continued to act as counsel to Level Solar until mid-2017, when QED

and the Company's other director sought to remove Keiser as a director for gross

mismanagement, self-interested transactions, embezzlement, falsification of the Company's

books and records, and securities fraud.  In another breach of their professional responsibility

that confirmed their earlier conflict of interest, Defendants declined to advise the Company on

the basis of their relationship with Keiser.  It took Plaintiffs months after Defendants' withdrawal

to piece together Keiser's entrenchment scheme and Defendants' role therein back in 2014.

4.     QED would have not made its 2015 and later investments in Level Solar had it

not been misled about Keiser's entrenchment scheme.  Emboldened by the elimination of the

"for cause" removal provision in the investors' rights agreement, Keiser proceeded to

mismanage and loot Level Solar, causing damages to the Company itself.  Keiser also doctored

the Company's internal financial records and its financial statements made available to investors

and banking institutions, thereby delaying discovery of his wrongdoing.  Both QED and Level

Solar were further damaged by the added time and expense necessary finally to remove Keiser

by means other than that provided in the original investors' rights agreement, during which time

Keiser continued to harm the Company.

---

[1] QED and the Company, the latter as represented by the Trustee, are jointly referred to herein as "Plaintiffs."

Parties, Jurisdiction and Venue

5.      Plaintiff QED, LLC is a limited liability company formed under the laws of Delaware with its principal place of business in Connecticut.  QED's members are William Frey and Carrie Frey, each of whom is a citizen of the State of Connecticut.

6.      Level Solar is a corporation formed under the laws of Delaware with its principal place of business in New York.  It is the Debtor in Chapter 11 proceedings in the U.S. Bankruptcy Court for the Southern District of New York filed on December 4, 2017, *In re Level Solar, Inc.*, Case No. 17-13469.  On October 9, 2018, Plaintiff Ronald J. Friedman was appointed Trustee of the Debtor pursuant to order of the Bankruptcy Court dated September 28, 2018.

7.      Defendant Faber Daeufer & Itrato, P.C. is a professional corporation organized under the laws of the Commonwealth of Massachusetts that is licensed to do business in and has an office in New York.

8.      Defendant Kenneth Itrato is a principal of the Faber Firm and is a resident of Massachusetts.

9.      Defendants David Nicolaisen was at all relevant times a counsel of the Faber Firm and is a resident of Massachusetts.

10.      This Court has subject matter jurisdiction over the claims of each Plaintiff against Defendants pursuant to 28 U.S.C. §1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.00.

Factual Background

11.     Prior to its bankruptcy, Level Solar was in the business of financing and installing solar panels on private residences in transactions with the owners of such structures to share electricity produced therefrom and to sell portions to utilities.

12.     Richard Keiser was the founder of and a common shareholder in Level Solar.

13.     In November 2013, QED made its first investment in Level Solar, which at that time was called Elevate Solar, Inc.  Elevate changed its name to Level Solar effective December 13, 2013.  Pursuant to that first investment, QED became the holder of preferred stock in Level Solar.

14.     At the time of QED's first investment, QED, Keiser, and Level Solar entered into an "Investor Rights Agreement" that delineated certain rights and duties of the parties in the Company.  Insofar as is relevant here, the Investor Rights Agreement contained a Section 2.3 entitled "Voting Agreement Regarding Common Director and Preferred Director" that gave each of Keiser and QED the ability to nominate a director of the Company (called the "Common Director" in the case of Keiser and the "Preferred Director" in the case of QED) and required Keiser and QED to vote their respective shares in favor of the election of the other's nominee. Section 2.3 further provided that each party was required to vote its shares in such a manner that "[Keiser's] Common Director may not be removed from office *other than for cause* unless such removal is directed or approved by [Keiser]."  (italics added).

15.     Pursuant to the Investor Rights Agreement, Keiser became the Common Director of Level Solar and Ms. Carrie Frey became the Preferred Director.

16.     In 2014, QED contemplated further investment in Level Solar and QED introduced new potential investors in the Company.

17.     In the ensuing 2014 negotiations over QED's further investment, the Faber Firm, including Defendant Itrato and another attorney named David Nicolaisen, represented both Level Solar and Keiser.  (Itrato and Nicolaisen are sometimes jointly referred to herein as the "Faber Attorneys").  QED and the other potential investors had its/their own separate counsel.

18.     On August 21, 2014, Itrato sent QED's counsel an email that attached several draft documents, including a proposed "Amendment No. 1 to [the] Investor Rights Agreement."  The latter draft included the language in the original Investor Rights Agreement regarding removal of the Common Director (Keiser) "for cause."

19.     After receiving comments from QED's counsel on the draft documents, the Faber Attorneys on September 9, 2014 sent Keiser clean and "marked" versions thereof.  Section 2.03 of the "Amended and Restated Investor Rights Agreement" (marked as "Faber Draft of 9/8/14") showed no material changes to that section except that "the size of the Board of Directors of the Company shall be two (2) people."  More specifically, it included the prior language that excused QED from voting its shares in favor of Keiser as the Common Director if the vote concerned Keiser's removal "for cause."

20.     By e-mail dated September 10, 2014, Keiser replied to the Faber Attorneys that he had "made very minor edits directly in the documents [sent the previous day] and tracked changes."  The tracked changes reveal that Keiser proposed striking the words "other than for cause" in Section 2.3 of the Amended and Restated Investor Rights Agreement.  The clear import of Keiser's proposed change, together with the prior change of limiting the Board of Directors to two people, was to entrench himself as the Common Director, or in words of the document as revised, "the Common Director may not be removed from office unless such removal is directed or approved by the Founder" – that is, by Keiser himself.

21.     The Faber Attorneys recognized the significance of Keiser's entrenchment scheme.  They conspired with Keiser to hide the change to Section 2.3 from QED's lawyers by sending a version of the Amended and Restated Investor Rights Agreement that accepted Keiser's deletion of the words "other than for cause" directly to Keiser for forwarding to QED's principal, Bill Frey.  Defendant Itrato wrote to Keiser on September 10, 2014, "you can forward to Bill [Frey of QED] as you see fit.  (We can't directly e-mail to him without including his counsel.  I hope you understand)."

22.     That same day, September 10, 2014, Nicolaisen sent "clean" copies of the revised documents, including the Amended and Restated Investor Rights Agreement, to Keiser who, in turn, forwarded them to Bill Frey's e-mail address.  Keiser and the Faber Firm deliberately concealed from QED, from QED's counsel and from the other Level Solar director the change in the ability to remove Keiser for cause.  None of them independently discovered the change, nor could reasonably have been expected to have done so without Keiser or the Faber Attorneys sending a draft that marked such a subtle change in the prior terms of a lengthy document.

23.     In the remaining months of 2014, the Company, represented by the Faber Attorneys, continued to negotiate the first investment by other investors named Richard and Lisa Pell.  On December 12, 2014, Itrato wrote to Keiser to highlight some of the changes made in the previously drafted documents to account for the Pell investment.

24.     In a clear reference to the fraud that they had perpetrated in the September 10, 2014 version of the Amended and Restated Investor Right Agreement, Itrato wrote that "[QED's] counsel reviewed [the] drafts a few months ago, but have not seen these [attached documents for the Pells] with the number rolled-forward, so you are going to want to manage

that process so that you don't get surprised by a possible late request by Bill [Frey at QED] to

have his counsel re-review . . . "

25.     Even more telling, the e-mail correspondence in this period reflects the following

dialog between Keiser and the Faber Attorneys:

**(2) AR-IRA** [Amended and Restated Investor Rights Agreement]

[By Keiser] (a) 2.3 Confirming "cause" provision has been removed as discussed with
Ken [Itrato] and you [David Nicolaisen]

[By Faber Attorneys] Yes, though note that even in the absence of that language, if a
director is doing something very bad (e.g., stealing from the corporation) arguments can
be made to a court for removal.
…

[By Keiser] (c) 2.3:  To me, this now reads that I cannot be removed from the board
unless I elect myself off.  [I]s that correct?

[By Faber Attorneys]:  Yes, I share that reading as a matter of contract – although please
note the comment . . . above [regarding arguments to a court for removal].

**(3) AR-CoInc** [Amended and Restated Certificate of Incorporation]

[By Keiser] (a) Through what mechanism is the board enlarged?  I.e., Could the holders
of Preferred decide to enlarge the board to 5 [members], and then use their majority to
elect 4 new member over-riding my 2x vote?

[By Faber Attorneys] The voting agreement in Section 2.3(i) of the Investor Rights
Agreement requires you, QED and Pell to maintain a board of directors of 2 people.
Amendments to that agreement require your consent.

26.     The clear import of the above correspondence is that the Faber Firm was advising

Keiser how best to entrench himself as one of two directors of Level Solar in such a way so that

even if he did something "very bad" in his various positions there, the only recourse for QED,

Richard Pell, and the Company would be "arguments made to a court for [Keiser's] removal,"

which process would be time-consuming and expensive.  The Faber Firm further advised Keiser

how to continue to conceal the changes that Keiser had made in the "for cause" provision of the

Investor Rights Agreement from QED.  Finally, the Faber Firm breached its duty to its own client, Level Solar, by failing to disclose any of the above to the other Level Solar director.

27.     Satisfied with the personal legal advice that he had received from the Faber Firm, Keiser wrote to Richard Pell, Pell's counsel, and to Bill Frey at QED, with copies to the Faber Firm, on December 22, 2014 to relay matters that he (Keiser) had discussed in a "call with Level's lawyers," (*i.e.*, the Faber Firm) on the status of the paperwork for Richard Pell's first and QED's further investments in Level Solar and to encourage the latter to finalize that paperwork.

28.     In the e-mail, Keiser objected to comments that Pell's lawyer had made on the amended and restated certificate of incorporation and urged Pell to be satisfied with the "protections" on investment that QED had originally negotiated in 2013.

29.     Neither Keiser nor the Faber Attorneys informed QED, or its principals, that the former had conspired to eviscerate those original protections by secretly deleting the "other than for cause" clause in Section 2.3 of the Amended and Restated Investor Rights Agreement.

30.     In the period October 2014 to December 2016, QED was fraudulently induced to invest a total of $9.3 million in equity and debt issued by Level Solar.  QED would not have made any of those investments had it had notice of Keiser's plan to eliminate other Level Solar shareholders' ability to remove him even for cause as allowed in the original Investor Rights Agreement.

31.     Secure in his belief that he could not be removed as Common Director of Level Solar by vote of the shareholders and that Board of the Company could not be expanded beyond two directors, Keiser began to grossly mismanage the Company, including engaging in self-interested transactions. For example, from December 2015 through April 2017, without obtaining board approval or making any disclosure to his co-director, Ms. Carrie Frey, Keiser

caused the Company to pay $57,500 to an entity he apparently owned and controlled called Keiser Analytics, LLC on account of phantom "strategic consulting" or "sales consulting/strategy."  The Company has no record of any service or value being received for its payments.  Keiser also caused the Company to lease a ski condo in Idaho for unknown purposes (although upon information and believe, Keiser is himself a skier), again without any disclosure to, much less approval from, the other Company director or to investors.

32.     Keiser hid his conduct from co-director Carrie Frey and from QED as shareholder by lying and refusing to timely deliver to them, and later by falsifying, the books, records, financial statements and projections of the Company, particularly with respect to its assets and the cost of developing solar systems and operating its business.

33.     After Keiser was fired, the investors hired experienced management and accounting professionals who started to piece together Level Solar's financial records without Keiser's alterations and misstatements.  This was a laborious process because Keiser deliberately kept no Company books and records for long periods in 2017 and he did not (in breach of repeated assurances to investors) retain outside auditors to audit the Company.

34.     On or about May 11, 2017, QED notified Keiser that it intended to vote to remove Keiser as the Common Director of Level Solar for cause and that, as reconstituted, the board would remove him from his officer positions.  Keiser responded that QED had no right under the then extant Amended and Restated Investor Rights Agreement to remove Keiser for cause. Keiser did not then inform QED or his co-director, and neither could yet have reasonably discovered, that the deletion of such a removal right had been suggested by Keiser and incorporated by Faber Firm in the September 2014 drafting.

35.     On or about May 14, 2017, QED (through Bill Frey) and Carrie Frey requested that Itrato provide them with copies of the documents executed by them and Keiser in connection with the closing of the QED investment in Level Solar back in February 2015.  By e-mail dated May 14, 2017, Itrato provided copies of the documents, including the Amended and Restated Investor Rights Agreement.

36.     In the cover email, Itrato stated that "because of [the Faber] firm's prior representation of Richard Keiser, we cannot advise [Level Solar] on matters adverse to him.  If matters become contentious, we recommend that all interested parties obtain their own counsel."  Itrato did not mention that, during the period when the attached documents were being negotiated and executed in 2014 and 2015, the Faber Firm breached its duties of candor and loyalty to its other client, Level Solar, by participating in and advancing Keiser's entrenchment scheme.

37.     Not aware of the past fraud and, as of May 2017, appearing to be faced with the prospect of a long and expensive Court proceeding to remove Keiser (during the pendency of which Keiser would likely further damage the Company), QED was forced instead to convert its preferred shares to common stock so as to be able to vote for the Common Director.  QED incurred damage in so doing because, among other things, the change in QED's form of ownership reduced its priority among creditors in the ensuing Level Solar bankruptcy.

38.     Effective June 13, 2017, the necessary quorum of the common stockholders of Level Solar (now including QED) waived notice and holding of a special meeting of stockholders and adopted a resolution to remove Keiser as a director of the Company.  On the same day, the other, remaining director notified Keiser that he had been removed as Chief Executive Officer, President, Secretary, and Treasurer of Level Solar.

39.     The delay in the removal of Keiser happened at the busiest time of the year for solar installers, including Level Solar, thereby exacerbating the damages he was able to inflict on the Company.

40.     The Company was, by then, no longer economically viable and it filed for bankruptcy on December 4, 2017.

41.     Neither of the Plaintiffs discovered the Faber Firm's role in the fraud and/or its breach of fiduciary duty to the Company until February 2018 and neither could reasonably have discovered that role earlier.

**FIRST CAUSE OF ACTION**
**(Conspiracy to Defraud QED)**

42.     Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein.

43.     During the 2014-2015 negotiations of QED's investments in Level Solar, Keiser and the Faber Attorneys engaged in a pattern and practice of marking, or at least noting in transmittal correspondence, material changes from past documentation in drafts previously circulated to QED, Pell and their respective principals and counsel.

44.     In September 2014, Keiser proposed a change in the "for cause" removal provision of the Investor Rights Agreement that he and the Defendants intended to circulate to QED and its counsel without telling the latter.

45.     Defendants assisted Keiser by implementing the change, placing it in a "clean" (*i.e.,* unmarked) copy of a draft Investor Rights Agreement and advising Keiser to send it directly to QED's principal rather than having the Faber Attorneys send it (who considered themselves obligated to copy QED's attorneys).

46.     Defendants again assisted Keiser in keeping notice of this change in the Investor Rights Agreement concealed from QED and its principals in December 2014.

47.     Also in December 2014, Keiser misleadingly stated that the documents then under negotiation for the Pells' investments provided the Pells with protections similar to those that QED had negotiated in 2013 when, in fact, he and Defendants knew that they had eviscerated those protections in their secret excision of the "for cause" removal provision in the Amended and Restated Investor Rights Agreement.   The Faber Attorneys were parties to Keiser's intentionally misleading communication and did nothing to correct it.

48.     Both Keiser and Defendants knew during the period of QED's investments in Level Solar from October 2014 to December 2016 that QED and its members were unaware of the changes that they had made from the Original Investor Rights Agreement and they deliberately took advantage of QED's ignorance.

49.     Defendants directly defrauded QED or knowingly and actively participated in a scheme with Keiser to defraud QED by entrenching Keiser as Common Director so that he could not be removed even for cause except through expensive and time-consuming court proceedings.

50.     QED reasonably relied on Defendants to bring to their attention the change that they made with Keiser to the "for cause" removal provision of the original Investor Rights Agreement and not to participate with Keiser in a fraud upon them.

51.     The omission of information about the change to the Amended and Restated Investor Rights Agreement and Keiser's misleading statements about the "protections" QED had retained as investors of Level Solar were highly material and QED would not have invested in Level Solar after September 2014 had it not been fraudulently induced by Defendants' and Keiser's material omissions and misrepresentations.

52.      QED is entitled to $8.3 million in recessionary damages from Defendants for the fraudulent inducement of its investments in Level Solar and/or their active and knowing participation in a fraud conducted by Keiser upon it.

### SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty to Level Solar)

53.      Plaintiffs repeat and reallege each and every allegation of the foregoing paragraphs as if fully set forth herein.

54.      During the 2014-2015 negotiations of QED's investment in Level Solar, Defendants, and all Faber Firm attorneys were corporate counsel to Level Solar and owed the Company fiduciary duties.  At the same time, they also acted as counsel to Keiser in Keiser's personal capacity as a common stockholder in Level Solar.

55.      During the 2014-2015 negotiations of QED's investments in Level Solar, the Company had two directors:  Keiser and Carrie Frey.

56.      Beginning no later than Keiser's September 10, 2014 e-mail to the Faber Attorneys in which he proposed to delete the "other than for cause" removal language in the draft Amended and Restated Investor Rights Agreement, Defendants' fiduciary duties obligated them (i) to inform Level Solar (and in particular Carrie Frey as director) of the proposed change and (ii) not to advise or assist Keiser in any way that advanced his personal self-interest in entrenching himself as a Common Director of Level Solar even if there were cause to remove him based on conduct adverse to the Company's interests.

57.      Defendants breached their fiduciary duties to the Company by failing to inform the Company or director Carrie Frey of Keiser's actions to entrench himself even against acts adverse to the Company that would give cause to vote to remove him and by knowingly advising and assisting Keiser to evade others' detection of his entrenchment scheme.

58.     As a proximate result of Defendants' breach of fiduciary duty, Keiser engaged in self-interested transactions and otherwise grossly mismanaged and injured Level Solar in the belief that he could not be removed as a director (and thus as an officer) of the Company without a court proceeding.

59.     Defendants again breached their fiduciary duties to Level Solar in 2017 when Ms. Frey and Level Solar's preferred shareholders challenged Keiser about his wrongful conduct and Defendants withdrew from their representation of Level Solar citing their representation of Keiser personally.

60.     Level Solar was damaged by the delay in its ability to remove Keiser, who continued to injure the Company in the interim, and by the expense associated with having to retain new counsel to assist it.

61.     Level Solar was damaged by Defendants' breaches of fiduciary duty through past payment of attorneys' fees to Defendants and in further amounts to be determined at trial.

WHEREFORE, Plaintiff QED demands compensatory damages in the amount of $8.3 million and Plaintiff Ronald J. Friedman, in his capacity as Chapter 11 Trustee of Level Solar, demands compensatory damages on behalf of the Company in an amount to be determined at trial and disgorgement of attorneys' fees previously paid to Defendants by Level Solar, and both Plaintiffs further demand pre-judgment and post-judgment interest, punitive damages, their attorneys' fees, experts' fees, disbursements and costs in and of this Adversary Proceeding, and such other and further relief as the Court deems just and proper.

Both Plaintiffs respectfully demand a jury trial.

Dated:  April 2, 2020

WOLLMUTH MAHER & DEUTSCH LLP

By:  _/s/ Lyndon M. Tretter_
      Lyndon M. Tretter
      Brad J. Axelrod
500 Fifth Avenue, 12th Floor
New York, New York 10110
(212) 382-3300
*Attorneys for Plaintiff QED, LLC*


-and-


SILVERMAN ACAMPORA LLP

By:  _/s/ Anthony C. Acampora_
      Anthony C. Acampora
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6330
*Attorneys for Plaintiff Ronald J. Friedman, solely in his capacity as Chapter 11 Trustee of Debtor Level Solar, Inc.*