USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
QED, LLC, and RONALD J. FRIEDMAN, solely :
in his capacity as Chapter 11 Trustee of Debtor :
Level Solar, Inc., :
 :
                                Plaintiffs, :    20-CV-2767 (VEC)
 :
          -against- :    OPINION AND ORDER
 :
FABER DAEUFER & ITRATO, P.C., KENNETH :
ITRATO and DAVID NICOLAISEN, :
 :
                                Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Plaintiff QED, LLC brings a claim for civil conspiracy to defraud against Defendants Faber Daeufer & Itrato, P.C., Kenneth Itrato and David Nicolaisen ("Defendants").[1] *See* Am. Compl., Dkt. 39. Plaintiff was an investor in the now-bankrupt company, Level Solar, Inc. and Defendants were the attorneys for Level Solar. Am. Compl. ¶¶ 2, 13. Plaintiff alleges that Defendants conspired with Richard Keiser, Level Solar's founder, CEO, and co-director, to conceal the deletion of the "for cause" provision in the director removal section of the Amended and Restated Investor Rights Agreement. *Id.* ¶¶ 12, 48-58. Plaintiff alleges it would not have invested $9.3 million in Level Solar had it known that Keiser could not be removed from the board of directors "for cause." *Id.* ¶¶ 4, 30. Defendants made a motion for judicial notice and a motion to dismiss. Dkts. 44, 46. For the following reasons, Defendants' motion to take judicial notice is DENIED. Defendants' motion to dismiss is GRANTED.

---

[1]     Plaintiff Ronald J. Friedman, in his capacity as the Chapter 11 Trustee of Level Solar Inc., voluntarily dismissed his claims against Defendants. Dkt. 66. Accordingly, the only remaining claim is QED's claim for conspiracy to defraud. Am. Compl. ¶¶ 48-58.

## BACKGROUND

In November 2013, Plaintiff QED, LLC ("QED") invested in Level Solar, Inc., a company founded by Richard Keiser ("Keiser") that financed and installed solar panels on private residences.[2]  Am. Compl. ¶¶ 11-13.  QED has two members, William and Carrie Frey. *Id.* ¶ 5.  In connection with its initial investment, QED, Keiser, and Level Solar entered into an Investor Rights Agreement ("IRA").  *Id.* ¶ 14.  The IRA contained, *inter alia*, a section entitled "Voting Agreement Regarding Common Director and Preferred Director."  *Id.*  That section granted Keiser and QED the ability each to nominate a director to Level Solar's board and required Keiser and QED to vote their respective shares in favor of the other's nominee.  *Id.*  Accordingly, Keiser became the Common Director of Level Solar, and Carrie Frey became the Preferred Director.  *Id.* ¶ 15.  The IRA further provided that each party was required to vote its shares such that the "Common Director may not be removed from office other than for cause unless such removal is directed or approved by [Keiser.]"  *Id.* ¶ 14 (alteration in original).

In 2014, QED contemplated a second investment in Level Solar and also introduced new investors, Richard and Lisa Pells, to the company.  *Id.* ¶¶ 16, 23.  In preparation for the new investments, Keiser worked with Defendants, the lawyers who represented Level Solar, to prepare an Amended and Restated Investor Rights Agreement ("AIRA").  *Id.* ¶ 17.  On August 21, 2014, Defendant Itrato emailed a draft of the AIRA to QED's counsel.  *Id.* ¶ 18.  The draft included the language from the original IRA regarding the ability to remove the Common Director "for cause."  *Id.*  On September 9, 2014, after receiving comments from QED's counsel, Defendants emailed "clean and 'marked'" versions of the AIRA to Keiser.  *Id.* ¶ 19.  On

---

[2]  At the time QED invested in Level Solar, the company was called Elevate Solar, Inc.  Am. Compl. ¶ 13. On December 13, 2013, Elevate Solar, Inc. changed its name to Level Solar, Inc.  *Id.*  In 2017, Level Solar filed for bankruptcy in the Southern District of New York.  *See* Dkt. 17-13469.

2

September 10, 2014, Keiser replied to Defendants with a marked version of the draft AIRA that deleted the words "other than for cause" from the director removal section, resulting in the provision reading: "the Common Director may not be removed from office unless such removal is directed or approved by [Keiser.]" *Id.* ¶ 20; *See* Dkt. 47, Ex. A.  Later that day, Defendants sent Keiser a "clean" copy of the AIRA that accepted Keiser's deletion of the "for cause" provision.  *Id.* ¶¶ 21-22.  Defendants explained to Keiser that he could forward the revised draft to QED, but that Defendants could not do so without including QED's counsel.[3]  *Id.* ¶ 21; Dkt. 47, Ex. B.  Accordingly, on September 10, 2014, Keiser forwarded the revised draft AIRA to Mr. Frey.  *Id.* ¶ 22.  Over the course of the next few months, Keiser, QED, and the Pells continued to exchange drafts of the AIRA; no party ever objected to the deletion of the "for cause" provision. *See* Am. Compl. ¶¶ 23-28; Dkt. 47, Ex. F.  On February 2, 2015, nearly five months later, Keiser and Mr. Frey, on behalf of QED, signed the AIRA.  Dkt. 47, Ex. A.  QED made additional investments in Level Solar through December 2016.[4]  *See* Am. Compl. ¶¶ 4, 30.

Following the execution of the AIRA, Plaintiff alleges that Keiser began to "grossly mismanage" Level Solar and to hide his misconduct from his co-director Carrie Frey and from QED.  Am. Compl. ¶¶ 31-32.  On May 11, 2017, approximately two years after the AIRA was signed, Keiser, the Freys, the Pells, and another investor, Kevin Johnson, met.  *Id.* ¶ 34.  During the meeting, Keiser "offered to quit if the others expressed a lack of confidence in his reporting of the Company's financial data and models."  *Id.*  When Carrie Frey and the other investors attempted to accept Keiser's resignation, Keiser withdrew the offer.  *Id.*  A few days after the

---

[3]     The exact email from Itrato states: "You can forward to Bill as you see fit. (We can't directly e-mail to him without including his counsel.  I hope you understand.)".  Dkt. 47, Ex. B; Am. Compl. ¶ 21.

[4]     The precise dates of Plaintiff's further investments in Level Solar are unclear; the complaint alleges only that QED invested $9.3 million in Level Solar between October 2014 and December 2016.  Am. Compl. ¶ 30.

meeting, QED and Richard Pell contacted Defendants and explained that they believed they had cause to remove Keiser from the Level Solar board. *Id.* ¶ 36. On May 16, 2017, Itrato emailed QED and Mr. Pell a copy of the AIRA and encouraged "all interested parties [to] obtain their own counsel." *Id.* ¶¶ 37, 40.

On May 16, 2017, Carrie Frey, Mr. Pell, and Mr. Johnson informed Keiser that they intended to remove him from the Level Solar board of directors. *Id.* ¶ 41. Keiser replied that he could not be removed as a director, even for cause, and that he had no intention of resigning. *Id*. After consulting the director removal provision of the AIRA and learning, allegedly for the first time, that Keiser could not be removed for cause, QED converted its preferred shares to common stock so as to be able to vote for the common director. *Id.* ¶ 42. On June 13, 2017, the common shareholders of Level Solar, including QED, voted to remove Keiser as a director. *Id.* ¶ 43. Later that day, Carrie Frey, the company's remaining director, informed Keiser that he had also been removed as CEO, President, Secretary, and Treasurer of Level Solar. *Id.*

Plaintiff asserts a claim against Defendants for conspiracy to defraud. *Id*. ¶¶ 48-58. Specifically, Plaintiff alleges that Defendants conspired with Keiser to conceal the deletion of the "for cause" provision in the AIRA, thereby "entrenching" Keiser as the common director of Level Solar. *Id.* ¶ 55. Plaintiff alleges that it would not have invested $9.3 million in the company if "it had notice of Keiser's plan to eliminate other Level Solar shareholders' ability to remove him even for cause as allowed in the original Investor Rights Agreement." *Id*. ¶ 30.

## DISCUSSION

### I. Motion to Take Judicial Notice

In ruling on a motion to dismiss, the Court may consider the complaint, any materials attached to the complaint as exhibits, materials incorporated into the complaint by reference, documents that are integral to the complaint, and materials subject to judicial notice. *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018); *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010).

A court may take judicial notice of a fact that is "not subject to reasonable dispute" either because it is "generally known within the trial court's territorial jurisdiction" or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

On a motion to dismiss, the court can consider statements in documents incorporated by reference into the Complaint or integral to the Complaint. A document is "incorporated by reference" in a complaint if the complaint makes "a clear, definite and substantial reference to the document[]." *DeLuca v. AccessIT Grp., Inc.,* 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citation omitted). "A mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.,* 440 F. App'x 7, 9 (2d Cir. 2011). A document is "integral" to the complaint if the complaint "relies heavily upon its terms and effect." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co,* 62 F.3d 69, 72 (2d. Cir. 1995). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or

possession is not enough." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

Here, Defendants request that the Court take judicial notice of nine documents. *See* Dkt. 47, Exs. A-I. Defendants argue that the Court may take judicial notice of Exhibits A-I "because each is either incorporated into the Amended Complaint by reference, is integral to the Complaint, and/or its terms and conditions are relied on in the Complaint." Defs.' Mem. of Law, Dkt. 47 at 3. Defendants not only misunderstand the judicial notice rule but also confuse it with the rules governing what documents the Court may consider at the pleadings stage. As noted *supra,* judicial notice is reserved for facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court cannot take judicial notice of facts contained in a document merely because the document is referenced in or integral to the complaint. Nonetheless, the Court may still *consider* documents that are incorporated by reference or integral to the complaint in ruling on a motion to dismiss. *Cohen,* 897 F.3d at 80.

### A. Exhibits A, B, C, E, F, and G

Defendants' motion to take judicial notice of Exhibits A, B, C, E, F, and G is denied. The facts contained in these exhibits "do not constitute the sort of facts 'not subject to reasonable dispute' of which the Court may properly take judicial notice." *In re JP Morgan Chase Sec. Litig.,* 363 F. Supp. 2d 595, 626 (S.D.N.Y. 2005) (quoting Fed. R. Evid. 201(b)); *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.,* No. 14-CV-0048, 2015 WL 3999192, at *4 (S.D.N.Y. June 29, 2015) (noting that "the content of emails" is "not the proper subject of judicial notice").

Nevertheless, the Court will consider Exhibits A, B, C, E, F, and G in ruling on Defendants' motion to dismiss because each exhibit is either integral to the complaint or incorporated by reference. *Cohen,* 897 F.3d at 80. For example, Exhibit A is a copy of the signed AIRA, dated February 2, 2015 and Exhibit E is a written consent of directors Keiser and Carrie Frey authorizing Level Solar to sign the AIRA. Dkt. 47, Exs. A, E. These two documents form the basis of Plaintiff's claim and are, therefore, integral to the complaint. *Int'l Audiotext,* 62 F.3d at 72 (holding that a document is "integral" to the complaint if the complaint "relies heavily upon its terms and effect."). Moreover, the AIRA is referenced repeatedly throughout the amended complaint and is, therefore, also incorporated by reference. *See e.g.*, Am. Compl. ¶¶ 19-22, 24-25, 29, 33, 37-39, 41, 53, 57, 62, 70. Similarly, the email communications attached as Exhibits B, C, F, and G are directly quoted or referenced in the amended complaint. Am. Compl. ¶¶ 21-22, 24, 27-28. Accordingly, the Court may consider Exhibits B, C, F, and G as incorporated by reference and integral to the complaint. *DeLuca,* 695 F. Supp. 2d at 60; *Int'l Audiotext,* 62 F.3d at 72.

### B. Exhibits D, H, and I

Defendants' motion to take judicial notice of Exhibits D, H, and I is also denied. Exhibits H and I are email communications between Defendants and the Pells' counsel regarding the draft AIRA. Dkt. 47, Exs. H, I. For the reasons explained *supra,* these emails "do not constitute the sort of facts 'not subject to reasonable dispute' of which the Court may properly take judicial notice." *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. at 626; *Columbia Cas. Co.*, 2015 WL 3999192, at *4; *White Plains Hous. Auth. v. Getty Props. Corp.,* No. 13-CV-6282, 2014 WL 7183991, at *2 (S.D.N.Y. Dec. 16, 2014) (declining to take judicial notice of "an assortment of discovery materials" including "informal emails").

Exhibit D is a set of emails between Keiser and Mr. Frey dated January 6, 2015, in which Mr. Frey expressly declines Keiser's offer to have QED's counsel review a revised draft of the AIRA.[5]  Dkt. 47, Ex. D.  Defendants argue that the email exchange is relevant to undermine Plaintiff's argument that Defendants concealed the deletion of the "for cause" provision from QED.  Plaintiff, however, argues that Mr. Frey misunderstood Keiser's question and thought he was referring to a different document.  Pl. Opp., Dkt. 55 at 4.  Even if the facts contained in the email might otherwise be an appropriate subject of judicial notice (which they are not), the parties' factual dispute regarding the email's relevance would preclude the Court from taking judicial notice.  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (explaining that, to consider documents outside of the pleadings on a motion to dismiss, "[i]t must [] be clear that there exist[s] no material disputed issues of fact regarding the relevance of the document[s]."); *White Plains Hous. Auth.*, 2014 WL 7183991, at *3 (declining to take judicial notice of an affidavit because "its significance [is] the subject of much dispute, and the information is not generally known or supported by sources beyond question."); *see also Columbia Cas. Co.*, 2015 WL 3999192, at *4 ("the fact that a document is particularly helpful to one party does not make judicial notice proper.").

The Court will also not consider Exhibits D, H, and I in deciding Defendants' motion to dismiss.  The amended complaint makes no reference to Exhibits H and I, and there is no indication that Plaintiff knew about or had copies of these emails.  *See Mirage Entm't, Inc. v. FEG Entretenimientos S.A.,* 326 F. Supp. 3d 26, 33 (S.D.N.Y. 2018) (declining to consider emails that were neither explicitly nor implicitly referenced in defendant's counterclaims); *Dunne v. Doyle*, No. 13-CV-1075, 2014 WL 3735619, at *15 (D. Conn. July 28, 2014)

---

[5]  Mr. Frey's exact response reads: "I am not party to these documents. No need to have my lawyers to get involved."  Dkt. 47, Ex. D.

8

(declining to consider emails because "there has been no demonstration that these [emails] were in the Plaintiff's possession at the time the Complaint was drafted or that they were used in drafting the Complaint."); *DeLuca,* 695 F. Supp. 2d at 60 (declining to consider certain documents on a motion to dismiss that were not described in complaint). Similarly, although Plaintiff knew about the email correspondence attached as Exhibit D, Defendants fail to demonstrate that Plaintiff relied on the email in drafting the complaint. *Chambers,* 282 F.3d at 153 ("A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); *see also Walter v. Queens Coll.,* 390 F. Supp. 3d 382, 394 (E.D.N.Y. 2019) (declining to consider emails because plaintiff had not had the "opportunity to seek discovery regarding their factual bases and drafting processes.").

In sum, Defendants' motion to take judicial notice is denied. The Court will, however, consider Exhibits A, B, C, E, F, and G in ruling on Defendants' motion to dismiss. The Court will not consider Exhibits D, H, and I.

## II. Motion to Dismiss

### A. Plaintiff's Civil Conspiracy Claim is Dismissed as Time-Barred

#### i. Plaintiff's Claim is Barred by Connecticut's Statute of Limitations

Under New York's borrowing statute, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." *Thea v. Kleinhandler,* 807 F.3d 492, 497 (2d Cir. 2015); N.Y. C.P.L.R. § 202. A cause of action generally accrues where the plaintiff resides. *Gorlin v. Bond Richman & Co.,* 706 F. Supp. 236, 240 (S.D.N.Y. 1989) ("For purposes of the New York borrowing statute,

a cause of action accrues where the injury is sustained. In cases involving economic harm, that place is normally the state of plaintiff's residence."). Here, because Plaintiff resides in Connecticut, Am. Compl. ¶ 5, the cause of action accrued in Connecticut. Under Connecticut law, tort claims are governed by a three-year statute of limitations. Conn. Gen. Stat. § 52-577. Under New York law, claims based in fraud, including Plaintiff's conspiracy to defraud claim, are governed by a six-year statute of limitations. N.Y. C.P.L.R. § 213(8). Accordingly, the Court will apply Connecticut's shorter three-year statute of limitations and any relevant tolling provisions. *Thea,* 807 F.3d at 497.

Connecticut's three-year statute of limitations period "begins with the date of the act or omission complained of, not the date when the plaintiff first discovers an injury." *Haynes v. World Wrestling Entm't, Inc.,* 827 F. App'x 3, 9 (2d Cir. 2020); *LaBow v. Rubin*, 95 Conn. App. 454, 469 (2006); Conn. Gen. Stat. § 52-577. Here, the alleged act or omission underlying Plaintiff's conspiracy claim, the deletion of the "for cause" provision, occurred on September 10, 2014.[6] Am. Compl. ¶ 22. Because Plaintiff did not initiate this action until April 2, 2020, almost six years later, Plaintiff's claim is time-barred.

## ii. Equitable Tolling Does Not Apply

Plaintiff argues that the statute of limitations was tolled because Defendants fraudulently concealed its cause of action. Pl. Opp., Dkt. 54 at 21-24. The Court disagrees. To allege fraudulent concealment sufficient to toll the statute of limitations, Plaintiff must allege that Defendants: (i) had actual awareness, rather than imputed knowledge, of the facts necessary to establish Plaintiff's cause of action; (ii) intentionally concealed those facts from Plaintiff; and (iii) concealed the facts for the purposes of delaying Plaintiff from filing a complaint. C.G.S.A.

---

[6] Even if the Court were to use February 2, 2015, the date Plaintiff signed the AIRA, as the date on which the alleged act or omission occurred, Plaintiff's claim would still be time-barred.

§ 52-595; *Falls Church Grp., Ltd. v. Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 105, (2007). Plaintiff must also allege that it was ignorant of the facts that Defendants sought to conceal. *Hodges v. Glenholme Sch.*, 713 F. App'x 49, 51 (2d Cir. 2017); *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 427 (2d Cir. 1999) (explaining that the tolling statute operates "only" for those "who are not aware of the facts that have been concealed."). Equitable tolling is only "permitted until the fraud or concealment is, or should have been, discovered by a reasonable person in the situation." *Iavorski v. U.S. I.N.S.,* 232 F.3d 124, 134 (2d Cir. 2000); *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir. 1996) (equitable tolling requires a party to "proceed with reasonable diligence during the period it seeks to have tolled."). Plaintiff must plead the elements of fraudulent concealment with particularity. *Zirvi v. Flatley*, No. 20-546, 2020 WL 7294559, at *2 (2d Cir. Dec. 11, 2020).

Here, Plaintiff has not – and cannot – allege that it was "ignorant" of the facts Defendants allegedly sought to conceal, namely the deletion of the "for cause" provision. Plaintiff had a copy of the AIRA for nearly five months before signing it. Am. Compl. ¶ 22. While Plaintiff may not have read the AIRA, it nonetheless had constructive notice of its contents and any resulting claims. *Dodds v. Cigna Sec., Inc*., 12 F.3d 346, 352 (2d Cir. 1993) (rejecting plaintiff's fraudulent concealment argument because plaintiff's "receipt of the prospectuses [several weeks before she invested] put [her] on constructive notice of her claims."); *Martinelli*, 196 F.3d at 427 ("there plainly can be no effective tolling for a plaintiff who was aware of the existence of his or her cause of action from the time the claim originally accrued"); *Hodges v. Glenholme Sch.,* No. 15-CV-1161, 2016 WL 4792184, at *7 (D. Conn. Sept. 13, 2016), *aff'd,* 713 F. App'x 49 (2d Cir. 2017) (rejecting plaintiff's equitable tolling argument and explaining that even if plaintiff had a delayed understanding of the underlying facts, she was aware of them and therefore "at

least on 'inquiry notice'"); *Maslak v. Maslak*, 2013 WL 5663798, at \*4 (Conn. Super. Ct. Sept. 27, 2013) ("There can be no concealment which will prevent the running of the statute of limitations where the cause of action is known to the plaintiff or there is a presumption of such knowledge. . . . When a plaintiff learns of information that would lead to discovery of a cause of action through due diligence, the statute of limitations runs even if there has been fraudulent concealment.") (cleaned up). In other words, because Plaintiff "had all the information [it] needed" to allege a civil conspiracy claim as soon as it received a copy of the revised AIRA, or at the very latest, when it signed the AIRA on February 2, 2015, there was no fraudulent concealment. *HV Assocs. v. PNC Bank, N.A.*, 2020 WL 5819559, at \*8 (S.D.N.Y. Sept. 30, 2020) ("Because Plaintiffs had all the information they needed to pursue a FOIA request by the time they got the Draft Complaint, [], the Court concludes no equitable tolling is due."). Accordingly, the statute of limitations was not tolled. *Hodges,* 2016 WL 4792184, at \*7 ("A plaintiff need not have an understanding of the full extent of her harm, nor its legal import, in order to have sufficient knowledge to bring a claim.").

Plaintiff's allegations that it could not have been expected to "parse the changes to [the] language" or to notice the "subtle change in the prior terms" of such a "lengthy document" are, to be charitable, unpersuasive.[7] Am. Compl. ¶¶ 22, 33. At only fourteen pages long, the AIRA is not a "lengthy document," and a standard redline comparison would have revealed any changes made to the prior version of the document. *See Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("equitable tolling is an extraordinary measure" that

---

[7] Similarly, Plaintiff's argument that it had "no reason to consult the removal language of Section 2.3," Am. Compl. ¶ 33, until it "had a *reason* to remove a director for cause," Pl. Opp., Dkt. 54 at 23, is nonsensical. Contracts are replete with provisions governing circumstances that may or may not ever arise. Contracting parties are, nevertheless, charged with knowledge of the terms of contracts they sign.

requires a reasonable level of diligence); *Maslak*, 2013 WL 5663798, at *4 ("equitable tolling only permits a plaintiff to avoid the bar of the statute of limitations if *despite all due diligence*, he is unable to obtain vital information bearing on the existence of his claim.") (emphasis in original). Moreover, Plaintiff does not allege that Defendants prevented or discouraged QED or its counsel from reviewing the AIRA during the five months of negotiations with the other investors.[8] *See Dodds,* 12 F.3d at 352 (rejecting plaintiff's fraudulent concealment argument because there was "no allegation that defendants prevented or discouraged [plaintiff] from reviewing the prospectuses that were provided to her several weeks before she invested in the limited partnerships").

In sum, Plaintiff fails to allege that it was ignorant that the "for cause" provision contained in the IRA had been deleted in the AIRA.[9] Accordingly, the statute of limitations was not tolled, and Plaintiff's claim is dismissed as time-barred.

---

[8] Plaintiff's conclusory statement that "Defendants intentionally took steps to keep QED from reading the document closely or involving its counsel," Pl. Opp., Dkt. 54 at 13, is wholly unsupported. The cited paragraphs of the amended complaint do not allege or imply that Defendants prevented or interfered with QED or its counsel's ability to review the AIRA before QED signed it.

[9] Plaintiff also fails to allege that Defendants "intentionally concealed" any facts from Plaintiff. The fraudulent concealment statute requires an "affirmative act of concealment beyond mere silence." *Fenn v. Yale Univ*., 283 F. Supp. 2d 615, 636–37 (D. Conn. 2003). Accordingly, Defendants' failure to "inform[]" QED of the deletion of the "for cause" provision or to "correct" Keiser's allegedly misleading communication, Am. Compl. ¶¶ 29, 53, is insufficient. Moreover, even assuming Plaintiff had adequately alleged that Defendants intentionally concealed the deletion of the "for cause" provision, it fails to allege that Defendants concealed that fact *for the purpose* of delaying Plaintiff from initiating this lawsuit. *See Bailey v. Interbay Funding, LLC*, 17-CV-1457, 2018 WL 1660553, at *13 (D. Conn. Apr. 4, 2018) (rejecting fraudulent concealment defense because plaintiff did not allege that defendants "took any action after the sale was completed to conceal the alleged fraud related to the appraisal from him, much less than they did so in order to delay his filing a claim against them."); *Hodges,* 2016 WL 4792184, at *6 ("The actions of the defendant must be directed to the very point of obtaining the delay of which he afterward seeks to take advantage by pleading the statute.") (citing *Bartone v. Robert L. Day Co*, 232 Conn. 527, 534 n.5 (1995)).

### B. Plaintiff Fails to State a Claim for Civil Conspiracy to Defraud

Even if Plaintiff's claim were not time barred, the Complaint would be dismissed for failure to state a claim. To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

New York does not recognize an independent tort of conspiracy; a civil conspiracy claim must be connected to a "separate underlying tort." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006); *Meisel v. Grunberg,* 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009). Thus, to plead a claim for civil conspiracy, Plaintiff must allege "the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Uni–World Capital, L.P. v. Preferred Fragrance, Inc.,* 43 F. Supp. 3d 236, 251 (S.D.N.Y. 2014); *Meisel,* 651 F. Supp. 2d at 119. Because civil conspiracy is derivative of an underlying tort, a civil conspiracy claim must be dismissed if "the underlying tort claim either is not adequately pleaded or has been dismissed." *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99-CV-9623, 2007 WL 1040809, at *25 (S.D.N.Y. Apr. 4, 2007) (citing *Kirch*, 449 F.3d at 401).

Here, Plaintiff relies on Keiser's alleged fraud as the underlying tort to support its civil conspiracy claim against Defendants.[10] To state a claim for fraud under New York law, plaintiff

---

[10] Although the parties do not address the issue directly, there is some dispute whether Plaintiff's failure to allege a fraud claim as a separate cause of action is itself grounds for dismissal. *Compare Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.,* 2007 WL 1040809, at *25 (S.D.N.Y. Apr. 4, 2007) (dismissing conspiracy to breach fiduciary duty claim because "plaintiffs have not alleged a separate claim for breach of fiduciary duty in the FAC.") *with Amusement Indus., Inc. v. Buchanan Ingersoll & Rooney, P.C.,* 2012 WL 1193353, at *9 (S.D.N.Y. Apr. 10, 2012) (rejecting argument that a conspiracy to commit conversion claim should be dismissed because the complaint failed to allege a separate conversion count because plaintiffs "plainly alleged that [defendant] converted plaintiffs'

14

must allege: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant; (2) made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." To satisfy this requirement, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993). Conclusory statements and allegations are insufficient to satisfy the Rule 9(b) pleading requirements. *Musalli Factory for Gold & Jewelry Co. v. JPMorgan Chase Bank, N.A*., 382 F. App'x 107, 108 (2d Cir. 2010).

Plaintiff's complaint falters at the first step; Plaintiff fails to allege any misrepresentation or material omission of fact by Keiser or anyone else. Although Plaintiff insists that Keiser made "false or misleading representations to QED about the important change he slipped into the AIRA draft," Pl. Opp., Dkt. 54 at 12, the complaint contains no allegations detailing these alleged misrepresentations. Moreover, Plaintiff does not adequately allege that Keiser failed to disclose the changes made to the IRA when drafting the AIRA. As noted *supra*, Keiser sent Plaintiff the draft AIRA (with the now objected-to deletion) five months before Plaintiff signed it. Am. Compl. ¶ 22. Plaintiff does not allege that Keiser prevented QED or its counsel from reviewing the AIRA or comparing it to the IRA at any point during that five-month period or

---

$13 million" within the complaint). The Court need not reach this issue, however, and will, for the purposes of this Opinion, assume that Plaintiff was not required to assert a separate cause of action for fraud. Nevertheless, as explained *infra*, because Plaintiff fails to state a claim for fraud, Plaintiff's claim for conspiracy to defraud is dismissed.

made any representations about changes that had been made to the IRA. Accordingly, Plaintiff's allegation that Keiser concealed the deletion of the "for cause" provision is unavailing.[11] *See Adikes v. N. Fork Bancorporation, Inc.,* 760 N.Y.S.2d 50, 51 (2003) (holding that plaintiff failed to allege a misrepresentation or material omission of fact regarding defendant's mandatory retirement policy because the policy was "disclosed to the plaintiff before the execution of the merger agreement" and plaintiff would have discovered it had he "exercised reasonable diligence by reviewing the defendant's bylaws"); *Ellington v. EMI Mills Music, Inc.,* 959 N.Y.S.2d 88 (Sup. Ct. 2011) (holding that defendant did not fail to disclose any material information because its disclosures "openly disclosed [its] method of accounting and payment."); *Castro v. Marine Midland Bank, N.A.,* 695 F. Supp. 1548, 1551 (S.D.N.Y. 1988) (holding that plaintiff failed to identify any misrepresentations by defendants regarding the "existence or effect" of an arbitration clause within an agreement because plaintiff read the clause, "voiced no opposition," and signed the agreement).

In sum, because Plaintiff fails to allege any misrepresentation or material omission of fact, Plaintiff fails to state a claim for fraud.[12] As noted *supra*, a civil conspiracy claim must be

---

[11] To be clear, the Court does not hold that a plaintiff's failure to conduct its own redline comparison of two documents necessarily precludes it from adequately alleging a fraud claim. The Court can imagine a situation in which a defendant might send a significantly revised version of a document with an accompanying message stating that "nothing was changed" from the previous version. Such a statement could very well constitute a misrepresentation or omission of material fact for purposes of asserting a fraud claim. Here, however, Plaintiff does not allege that Keiser ever stated or implied that he had made no changes to the IRA in preparing the AIRA.

[12] Although the Court need not address the remaining elements of fraud, the Court notes that Plaintiff has also failed to allege that it reasonably relied on Keiser's alleged concealment. As noted *supra,* QED was a sophisticated investor, represented by counsel, and had access to the AIRA for five months before signing it. *See Grumman Allied Indus. v. Rohr Indus., Inc.,* 748 F.2d 729, 737 (2d Cir. 1984) ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance."); *U.S. Legal Support, Inc. v. Eldad Prime, LLC*, 5 N.Y.S.3d 1, 2 (2015) (holding that defendant could not "justifiably rely" on plaintiff's failure to "highlight" a deletion of a clause in the agreement to excuse its "failure to fully review the final version of [the] four-page document before signing it."); *Scott-Macon Sees., Inc. v. Zoltek Co.,* No. 04-CV-2124, 2005 WL 1138476, at *12 (S.D.N.Y. May 12, 2005) (defendant's "reliance on [plaintiff's] alleged misrepresentations during negotiations, which are directly contradicted by the plain language of the Agreement, was unreasonable and cannot sustain a claim"); *Stuart Silver Assocs.,* 665 N.Y.S.2d 415, 417 (1997) ("Where a party has the means to discover the true

16

dismissed if the underlying tort claim is not adequately pleaded. *Kirch*, 449 F.3d at 401.

Accordingly, Plaintiff's civil conspiracy claim is dismissed.[13]

## CONCLUSION

For the foregoing reasons, Defendants' motion to take judicial notice is DENIED. Defendants' motion to dismiss is GRANTED. This case is DISMISSED.

The Clerk of Court is respectfully directed to close all open motions and terminate this case.

**SO ORDERED.**

Date: February 22, 2021
New York, New York

_____
VALERIE CAPRONI
United States District Judge

---

nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations."); *Humble Oil & Refining Co. v. Jaybert Esso Serv. Station, Inc.,* 294 N.Y.S.2d 190, 192 (N.Y. 1968) ("The law does not relieve a person merely because he has failed to read a document which he has executed.").

The Court also rejects Plaintiff's argument of unilateral mistake induced by fraud. Pl. Opp., Dkt. 54 at 14. At the outset, Plaintiff is not seeking reformation of the contract. Even if it were, its "failure to read the final document before signing it precludes its claim of unilateral mistake induced by fraud." *U.S. Legal Support, Inc.,* 5 N.Y.S.3d at 2 (rejecting defendant's argument that plaintiff's "failure to highlight its deletion" of a provision of the agreement "before presenting it to defendant's in-house counsel for defendant's signature" was grounds for reformation based on unilateral mistake induced by fraud).

[13]  Even if Plaintiff had adequately alleged a fraud claim, it failed to allege the remaining elements of a civil conspiracy claim. At the outset, Plaintiff's repeated allegations that Defendants "conspired" with Keiser, Am. Compl. ¶¶ 2, 21, 29, are conclusory and insufficient. *Reich v. Lopez*, 38 F. Supp. 3d 436, 461 (S.D.N.Y. 2014) ("conspiracy allegations are deemed conclusory when the totality of the allegations starts and ends with a generic statement that the defendants conspired against the plaintiff."). Defendants' email to Keiser does not constitute an "agreement to engage in a common scheme or plan to defraud plaintiff"; the email merely explained that although Keiser could communicate directly with Mr. Frey, Defendants could not do so without including Mr. Frey's counsel. *Meisel*, 651 F. Supp. 2d at 121–22. Accordingly, Plaintiff fails to allege a corrupt agreement between Keiser and Defendants.

Plaintiff also fails to allege an "overt act" by Defendants in furtherance of the alleged conspiracy. "Failure to recognize or prevent fraud does not constitute an overt act." *Heinert v. Bank of Am. N.A.,* No. 20-0691, 2020 WL 6689287, at *4 (2d Cir. Nov. 13, 2020); *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 121 F. Supp. 3d 321, 339-40 (S.D.N.Y. 2015). Accordingly, Plaintiff's allegations that Defendants failed to recognize, prevent, or disclose Keiser's allegedly fraudulent conduct to QED, *see* Am. Compl. ¶¶ 22, 52, 54, are insufficient to constitute an "overt act" for purposes of a civil conspiracy claim. *Id.*